**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

METE KARABAS, on behalf of himself, all others
similarly situated, and the general public,

    Plaintiff,

          v.

TC HEARTLAND LLC,

    Defendant.

Case No.:  24-cv-2722

<u>CLASS ACTION</u>

**COMPLAINT**

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Mete Karabas, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, brings this action against Defendant, TC Heartland LLC ("Heartland" or "Defendant"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1.    Heartland markets and sells a sugar alternative, Splenda Naturals Stevia Zero Calorie Sweetener ("Splenda Naturals Stevia"), which it prominently labels, "100% Natural."



2.     That claim, however, is false and misleading because Splenda Naturals Stevia contains the non-natural, synthetic ingredients, stevia leaf extract and erythritol.

3.     Plaintiff brings this action against Heartland on behalf of himself and similarly-situated Class Members to enjoin Heartland from deceptively marketing Splenda Naturals Stevia, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

4.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Heartland. In addition, more than two-thirds of the members of the class reside in states other than the state in which Heartland is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

5.     The Court has personal jurisdiction over Heartland because it has purposely availed itself of the benefits and privileges of conducting business activities within New York, including by marketing, distributing, and selling Splenda Naturals Stevia in New York.

6.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), because Heartland resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7.     Plaintiff Mete Karabas is currently a resident of Lodi, New Jersey and was previously a resident of Brooklyn, New York. Mr. Karabas purchased Splenda Naturals Stevia in both New York and New Jersey.

8.      Defendant TC Heartland LLC is an Indiana limited liability company with its principal place of business in Carmel, Indiana.

## FACTS

### I.      HEARTLAND MARKETS SPLENDA NATURALS STEVIA AS "100% NATURAL"

9.      During the six years preceding the filing of this Complaint, and predating that, beginning in approximately September 2016, Heartland manufactured, distributed, marketed, and sold Splenda Naturals Stevia in a variety of sizes and formats, each prominently labeled "100% Natural" (the "Splenda Naturals Stevia Products").

10.     For example, Heartland sold and continues to sell the product in 9.8 oz. and 19 oz. jars, along with 16 oz. replacement packs, as depicted below.







11.    Heartland also sold and continues to sell the product in packages containing numerous individual packets (e.g., 40-, 80-, 140-, and 500-packet boxes), as depicted below.

  





12.     Heartland also sold and continues to sell the product in a 7.8 oz. "Granulated" bag, depicted below.



13.     In mid-2022, Heartland introduced new packaging for Splenda Naturals Stevia, which also prominently displayed the "100% Natural" claim. Some examples appear below.




  

14.     Splenda Naturals Stevia is available for sale at a variety of online retailers, such as Amazon, Walmart, and Target. Heartland provides product and marketing images to these online retailers, which prominently feature the "100% Natural" marketing.

15.     The following images, for example, come from Walmart's webpage for the product.

 

16.     Heartland markets Splenda Naturals Stevia in this manner because it knows the claim is compelling to consumers, who are willing to pay more for all-natural products. For

example, in an interview, Heartland Vice President of Marketing, Kim Holdworth, said the term is very meaningful to consumers shopping the non-nutritive sweetener category.

17.     American consumers are health conscious and look for wholesome, "100%" or "all" natural foods to keep a healthy diet. Food labels convey quality and nutrition information to consumers that they can and do use to make purchasing decisions.

18.     Surveys have shown that "natural" is one of the most compelling labeling claims to consumers. *See*, *e.g.*, David L. Ter Molen & David S. Becker, "An 'All Natural' Dilemma: As the Market for "All Natural' Foods Continues to Grow, So Do the Risks for the Unwary" (Nov. 27, 2012), at 2. Consumers desire natural ingredients in foods for a variety of reasons, including wanting to live a healthier lifestyle, the perceived benefits in avoiding disease and other chronic conditions, and to avoid chemical additives, among others. As a result, consumers are willing to pay more for foods marketed as natural, or especially as "all" or "100%" natural.

19.     Reasonable consumers understand and expect "all" or "100%" natural products to be ones that do not contain man-made, synthetic ingredients, nor ingredients subject to harsh chemical processes.

**20.**     Reasonable consumers lack the meaningful ability to test or independently ascertain the truthfulness of foods labeled as "all" or "100" natural, especially at the point of sale. Reasonable consumers would not know the true nature of the ingredients by merely reading the ingredient label; its discovery requires investigation beyond the grocery store, and knowledge of food chemistry beyond that of a normal consumer. Thus, reasonable consumers must, and do, rely on food companies such as Heartland to honestly report the nature of a food's ingredients, and food companies like Heartland intend and know that consumers rely upon foods labeling statements in making their purchasing decisions.

**II.   HEARTLAND'S "100% NATURAL" CLAIMS ARE FALSE AND MISLEADING**

21.   In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is only natural if: (a) it is manufactured, produced, or extracted from a natural source (*i.e.*, naturally occurring mineral or biological matter); (b) has not undergone a chemical change (*i.e.*, a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) any chemical change was created by naturally-occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

22.   Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

23.   While the U.S. Food and Drug Administration has not developed a definition for the use of the term "natural," it has said that it does not object to the use of the term if the food does not contain *synthetic substances*. *See* 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).

24.   The term "synthetic" is defined by Merriam-Webster as "of, or relating to, or produced by chemical or biochemical synthesis; especially: produced artificially." *See* http://merriam-webster.com/dictionary/synthetic.

25.   Splenda Naturals Stevia contains just two ingredients: Erythritol and Stevia Leaf Extract. The processes used to produce these ingredients do not occur naturally in nature; rather, they are synthetic processes undertaken in industrial factories. Thus, contrary to Heartland's marketing claim, both are synthetic ingredients.

A.      **The Stevia Leaf Extract in Splenda Naturals Stevia is a Synthetic Ingredient**

26.     On its website, Heartland describes the process of producing Stevia Leaf Extract as follows: "Dried stevia leaves are steeped in hot water to extract glycosides: the sweet-tasting parts of the leaf. The water is then filtered so the remaining material can be isolated and purified. The process, and processing aids, produce a crystalized sweet extract of the leaf."[1]

27.     Because this process does not occur in nature, Heartland's cursory description belies its marketing claim that Splenda Naturals Stevia is "100% Natural." But it also oversimplifies the process.

28.     The industrial process of extracting steviol glycoside from the stevia plant begins with extraction with hot water. Dry leaves are loaded into a trough, like the one depicted below, hot water from a boiler is added, and leaves are extracted with hot water by thorough mixing. The water extract is then discharged into a holding tank.



---

[1] https://www.splenda.com/products/naturals



29.     The liquid extract is then clarified by either chemical- or electro-coagulation and filtering in an industrial tank like the one depicted below.







30.     The water extract from the electro-coagulation stage is then filtered by an industrial

filter press, like the one depicted below, to remove coagulated contaminants.





31.     Next, the filtered water extract is clarified through (i) an activated carbon filter, (ii) a cation exchange column, then (iii) an anion exchange column. The equipment and processes are depicted below.





32.     Next, the clarified water extract is passed through a special macro-porous non-ionic resin column, during which time the steviol glycoside in the water gets adsorbed on the resin surface, which becomes saturated with steviol glycoside.



33.     As depicted below, a water-immiscible solvent, such as pure ethanol, is then passed through the column. The solvent takes up the steviol glycoside from resin.





34.    The resulting alcoholic solution of steviol glycoside is then concentrated with a nanofiltration membrane device, as depicted below.



**Step – 8 :   Concentration of alcoholic solution**

Alcoholic solution
of steviol
glycoside

Nanofiltration membrane device

Alcohol water
mixture for
purification and
recycling

35. The resulting mixture is then further purified through a series of industrial processes depicted below.





36.     A byproduct of this process, alcoholic TSG syrup, is then decolorized, using the equipment and process depicted below.





37.     Finally, hot, decolorized alcoholic TSG syrup is spray dried in industrial equipment as depicted below.





**B.      The Erythritol in Splenda Naturals Stevia is Synthetic**

38.      In a FAQ on its website, Heartland claims that "[e]rythritol is a natural sugar alcohol fermented from sugars and found in many vegetables and fruit."[2] As Heartland describes on its website, "[e]rythritol is made primarily from dextrose using a fermentation process."[3] Heartland further states that the erythritol it uses "is produced by a fermentation process using non-GMO corn," with the product "then filtered and dried into crystals."[4]

39.      In discussing erythritol, Heartland links to "International Food Information Council's overview" of the ingredient, at foodinsight.org/what-is-erythritol. That webpage explains that "[e]rythritol occurs naturally in a variety of foods . . . . Erythritol is also commercially produced using fermentation." Later, the article repeats, "[i]n addition to whole foods, erythritol

---

[2] https://www.splenda.com/faqs/what-is-erythritol-2

[3] *Id.*

[4] *Id.*

is commercially produced for use in baked goods, beverages, candies, chewing gums, chocolates, and tabletop sweetener packets."

40.     In fact, the erythritol used in Splenda Naturals Stevia is synthetically manufactured by first chemically extracting starch from corn and then converting the starch to glucose through the biochemical process of enzymatic hydrolysis. The glucose is then fermented using *moniliella pollinis*, a yeast. The fermentation broth is sterilized, filtered, and purified to produce erythritol crystals.[5] This is not the same process used in nature to produce the erythritol found "in many fruits and vegetables," like Heartland suggests on its website.[6]

## III.   HEARTLAND ATTEMPTED TO DISCLAIM ITS MISLEADING MARKETING

41.     Aware from the beginning that Splenda Naturals Stevia is *not* "100% Natural," but wanting to use that marketing claim, Heartland devised a plan it hoped would help it avoid liability for the misrepresentation: it simply re-defined the term to mean Heartland's own "natural standard," which permits synthetic ingredients to be designated "100% Natural" if their processing is "minimal" or "common." Thus, each package of Splenda Naturals Stevia contained a fine-print disclaimer, reading as follows:

> Splenda Stevia Sweetener is made with two non-GMO sweeteners: stevia leaf extract and erythritol. Stevia leaves are steeped in water to extract the sweet parts of the leaf and then undergo a process to separate, filer and purify the extract. Erythritol is produced by a fermentation process. Please see our website for more information on our natural standard: **www.splenda.com/naturals**.

---

[5] *See generally* Donald F. Schmdit, *GRAS Determination for Erythritol for Use in Human Food*, TOXSTRATEGIES (June 5, 2018), *at* https://www.fda.gov/media/132946/download (submitted to and published by FDA).

[6] https://www.splenda.com/faqs/what-is-erythritol-2

42.     A depiction of that disclaimer (on the back of the 1 lb. Granular Sugar Replacement

bag) appears below, in type far smaller than the prominent "100% Natural Ingredients, Nothing

Artificial" statement at the top.



43.     Throughout the Class Period, the referenced website prominently stated:

**What does natural mean to us?**

There are different definitions of "natural" in the food industry and among consumers. For
us at the Splenda brand, "natural" means no artificial flavors, colors or preservatives and
only non-GMO ingredients made by minimal and common processes.

44.     Despite its attempt to re-define "100% Natural," Heartland's disclaimers and website explanations were insufficient to dispel the misrepresentation.

45.     Reasonable consumers, including Plaintiff, expect that foods and beverages that are truly "100% Natural" have no synthetically-processed ingredients.

46.     Reasonable consumers, including Plaintiff, would not expect stevia leaf extract, and erythritol—synthetic compounds manufactured through extensive biochemical processes—to be present in foods labeled "100% Natural."

47.     Reasonable consumers are not expected to search the back and sides of products for more information about the product that could contradict other representations made on the label. Moreover, reasonable consumers expect that fine-print information on a product's label contains more detailed information about the product that confirms other representations. Here, Heartland's fine-print information *contradicts* the "100% Natural" claim.

48.     Moreover, because the disclaimer is in small print on the back or the side of the product's packaging, many consumers might not see it, particularly before making a first purchase. Even fewer consumers are likely to view Heartland's further explanations on its website, but for the ones who do, like the disclaimer itself, the information contradicts the "100% Natural" marketing claim.

49.     Moreover, on both the label and website, Heartland only makes partial disclosures, while continuing to omit material information. For example, Heartland's website refers to "processing aids" used to produce stevia leaf extract, but fails to disclose that these aids include chemicals like pure ethanol.

50.     As a result, Heartland actively concealed the truth from Plaintiff and other consumers, who could not have reasonably discovered the true nature of the misrepresentation on

their own. As a result of knowing and active concealment by Heartland, any applicable statutes of limitation have been tolled.

51.     Heartland was under a duty to disclose this information to consumers because it made partial representations, as described, and further was in a superior position to know of the true nature of the ingredients in Splenda Naturals Stevia, that is, that they are synthetically processed.

52.     Indeed, no reasonable consumer would know, or have reason to know, that the ingredients in Splenda Naturals Stevia are synthetic. That information was within the exclusive knowledge of Heartland and not known to ordinary consumers, including Plaintiff and other Class Members.

53.     Heartland's strategy in these regards is particularly egregious because it acknowledges consumer confusion over the term "natural."

## IV.   HEARTLAND MODIFIED THE LABELING & MARKETING TO CORRECT THE MISREPRESENTATION

54.     Following a lawsuit against a competing manufacturer, in around early 2023, Heartland began phasing the "100% Natural" claim out of its labeling and marketing for Splenda Naturals Stevia, replacing it with "U.S. Grown" or "Plant Based." Some examples of the revised labeling and marketing appear below.

[continued]

**Before**                                              **After**

  

  

 

## 100% Natural Ingredients, Nothing Artificial

Splenda Stevia sweetener uses stevia extract Reb D that tastes just like sugar and has no bitter aftertaste. Try it for yourself - we're confident you'll agree.

*You take the time to be healthy, so we take the time to make the best-tasting stevia.*

**A healthier lifestyle has never tasted so sweet.**

  

## Plant Based

Splenda Stevia sweetener uses stevia extract Reb D that tastes just like sugar and has no bitter aftertaste. Try it for yourself - we're confident you'll agree.

*You take the time to be healthy, so we take the time to make the best-tasting stevia.*

**A healthier lifestyle has never tasted so sweet.**

  

 

55.     Heartland similarly recently modified its website and disclaimer language, notably disclosing for the first time in the disclaimer material information demonstrating that the ingredients in Splenda Naturals Stevia Products are, in fact, synthetic, while removing the claim that they are natural. The underlined portions below indicate information Heartland added, and stricken text indicates information Heartland removed.

> Splenda Stevia Sweetener is made with two non-GMO sweeteners: stevia leaf extract and erythritol. Stevia leaves are steeped in water to extract the sweet parts of the leaf and then undergo a process **with other processing aids** to separate, filer and purify the extract. **None of the processing aids are in the final product.** Erythritol ~~is produced by a fermentation process~~ **starts with plant material which is processed. It then undergoes a fermentation step to produce erythritol.** Please see our website for more information on our ~~natural~~ **plant based** standard: **www.splenda.com/~~naturals~~plantbased**.

56.     Nevertheless, as of the time of this filing, Splenda Naturals Stevia Products bearing "100% Natural" claims are still available to purchase in the marketplace, and are still widely depicted online, including at major online retailers.

## V.     PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

57.     Plaintiff Mete Karabas is an avid tea and coffee drinker and prefers to sweeten his tea and coffee with all-natural non-nutritive sweeteners.

58.     Plaintiff purchased Splenda Naturals Stevia Products periodically throughout the Class Period, during approximately the last six years, perhaps longer, with his last purchase made a few months before this filing. Mr. Karabas' purchases included various packet-count boxes ranging from 40 to 500, both the small and large jars, and both the small and large granulated bags. He purchased the products from large supermarkets and retailers such as ShopRite and Walmart in both Brooklyn, New York, and Hackensack, New Jersey.

59.     When purchasing Splenda Naturals Stevia Products, Plaintiff was exposed to, read, and relied upon Heartland's labeling claim, "100% Natural," which was intended to appeal to

consumers, like him, who are interested in natural foods. Plaintiff believed this claim, which was and is deceptive because Splenda Naturals Stevia contains synthetic ingredients.

60.     Plaintiff acted reasonably in relying on the challenged labeling claim, which Heartland intentionally placed on the product's labeling with the intent to induce average consumers into purchasing Splenda Naturals Stevia.

61.     Plaintiff would not have purchased Splenda Naturals Stevia, or would not have been willing to pay the price he paid, if he knew that the "100% Natural" labeling claim was false and misleading in that the product contains synthetic ingredients.

62.     Splenda Naturals Stevia cost more than similar products without misleading labeling and would have cost less absent Heartland's false and misleading statements and omissions.

63.     Through the misleading labeling claims and omissions, Heartland was able to gain a greater share of the market than it would have otherwise and also increase the size of the market.

64.     For these reasons, Splenda Naturals Stevia products were worth less than what Plaintiff and the Class paid for them.

65.     Plaintiff and the Class lost money as a result of Heartland's deceptive claims, omissions, and practices in that they did not receive what they paid for when purchasing Splenda Naturals Stevia products.

66.     Plaintiff continues to desire to purchase all-natural non-nutritive sweeteners, and continues to see Splenda Naturals Stevia products at stores when he shops. He would purchase the products in the future if they were in fact "100% Natural" as represented, but unless Heartland is enjoined in the manner Plaintiff requests, he may not be able to reasonably determine whether the

products have been reformulated to conform to the misleading claims (for example, by using non-synthetic ingredients), or whether Heartland has continued to misrepresent the products.

67.     Plaintiff would purchase Splenda Naturals Stevia in the future if he could trust that the "100% Natural" claims were true and not false or misleading, but absent an injunction, Plaintiff will be unable to trust the representations on the products when he encounters them in the marketplace.

68.     Plaintiff's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

69.     While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States who, at any time from six years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, any Splenda Naturals Stevia product bearing the statement, "100% Natural" (the "Class").

70.     Plaintiff further seeks to represent subclasses of (i) all persons in New York, and (ii) all persons in New Jersey who, at any time during the Class Period, purchased, for personal or household use, and not for resale or distribution, any of the Products (the "New York Subclass" and "New Jersey Subclass," respectively, which are subsumed within the "Class").

71.     The members in the proposed Class and each Subclass, are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

72.     Questions of law and fact common to Plaintiff and the Class include:

a.      whether Heartland communicated a message through the packaging and advertising of Splenda Naturals Stevia that the product is "100% Natural";

b.      whether that message is material, or likely to be material, to a reasonable consumer;

c.      whether the challenged claim is false, misleading, or reasonably likely to deceive a reasonable consumer;

d.      whether Heartland was unjustly enriched;

e.      the proper amount of damages, including statutory and punitive damages;

f.      the proper amount of restitution;

g.      the proper scope of injunctive relief; and

h.      the proper amount of attorneys' fees.

73.     These common questions of law and fact predominate over questions that affect only individual Class Members.

74.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Heartland's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased Splenda Naturals Stevia products and suffered economic injury because the products are misrepresented. Absent Heartland's business practice of deceptively and unlawfully labeling the products, Plaintiff and other Class Members would not have purchased them or would have paid less for them.

75.     Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent

and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

76.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

77.     Heartland has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

78.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Unfair and Deceptive Business Practices, N.Y. Gen. Bus. L. § 349

### (On behalf of the New York Subclass)

79.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

80.     Heartland's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

81.     During the Class Period, Heartland carried out a plan, scheme and course of conduct that was consumer oriented.

82.     As alleged herein, Heartland engaged in, and continues to engage in, deceptive acts and practices by advertising, marketing, distributing, and selling Splenda Naturals Stevia Products with false or misleading "100% Natural" claims and representations, and deceptive omissions.

83.     Heartland's conduct was materially misleading to Plaintiff and the Class.

84.     As a direct and proximate result of Heartland's violation of N.Y. Gen. Bus. L. § 349, Plaintiff and the Class were injured and suffered damages.

85.     The injuries to Plaintiff and the Class were foreseeable to Heartland and, thus Heartland's actions were unconscionable and unreasonable.

86.     Heartland is liable for damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or $50 per unit, whichever is greater.

87.     Pursuant to N.Y. Gen. Bus. L. § 349(h), Plaintiff and the Class seek an Order enjoining Heartland from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.

## SECOND CAUSE OF ACTION

### False Advertising, N.Y. Gen. Bus. L. § 350

### (On behalf of the New York Subclass)

88.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

89.     Heartland has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way (both by affirmative misrepresentations and by material omissions), constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

90.     As a result of Heartland's false advertising, Plaintiff and the Class Members have suffered and continue to suffer substantial injury, including damages, which would not have

occurred but for the false and deceptive advertising, and which will continue to occur unless Heartland is permanently enjoined by this Court.

91.     Plaintiff and the Class seek to enjoin the unlawful acts and practices described herein, and to recover their actual damages or $500 per unit, whichever is greater, and reasonable attorney fees.

### THIRD CAUSE OF ACTION

**Violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*.**

**(On behalf of the New Jersey Subclass)**

92.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

93.     Plaintiff and Heartland are "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

94.     Plaintiff and the Members of the New Jersey Subclass are "consumers" within the meaning of the CFA.

95.     At all relevant times material hereto, Heartland conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

96.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

97.     Defendant's practices violated the CFA for, *inter alia*, one or more of the following reasons:

    a.     Defendant represented to Plaintiff and the New Jersey Subclass that the Splenda Naturals Stevia Products had approval or characteristics that they did not have;

b.      Defendant represented to Plaintiff and the New Jersey Subclass that the Splenda Naturals Stevia Products were of a particular standard, quality, or grade, when they were actually of another;

c.      Defendant advertised the Splenda Naturals Stevia Products to Plaintiff and the New Jersey Subclass with intent not to sell them as advertised;

d.      Defendant engaged in other fraudulent or deceptive conduct, creating a likelihood of confusion or misunderstanding; and

e.      Defendant represented that consumers' purchases of the Splenda Naturals Stevia Products conferred or involved rights that the transactions did not have or involve.

98.     Defendant consciously failed to disclose material facts to Plaintiff and the New Jersey Subclass with respect to the Splenda Naturals Stevia Products.

99.     Defendant thus used or employed unconscionable commercial practices, deception, false pretenses, or misrepresentations, or it knowingly concealed, suppressed, or omitted material facts, or some combination thereof, in connection with the sale or advertisement of the products.

100.    Had Defendant disclosed all material information regarding Splenda Naturals Stevia to Plaintiff and the New Jersey Subclass, they would not have purchased the Splenda Naturals Stevia Products or would have paid less for the Splenda Naturals Stevia Products. Plaintiff and the New Jersey subclass, in short, paid for a product and got something less than what had been promised.

101.    The foregoing acts, omissions and practices proximately caused Plaintiff and the New Jersey Subclass to suffer an ascertainable loss in the form of monetary damages, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

## Breach of Express Warranty, N.J. Stat. Ann. § 12A:2-313

## (On behalf of the New Jersey Subclass)

102.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

103.    As an express warrantor, manufacturer and merchant, Heartland was obligated under N.J. Stat. Ann. § 12A:2-313 to conform Splenda Naturals Stevia Products to its express warranties that the products were "100% Natural." These representations were "part of the basis of the bargain" in that Plaintiff and other New Jersey Subclass Members purchased the Splenda Naturals Stevia Products in reasonable reliance on those statements.

104.    Plaintiff and each New Jersey Subclass Member formed a contract with Heartland at the time they purchased the Splenda Naturals Stevia Products. The terms of the contract include the promise and affirmation of fact made by Heartland on the Products' packaging, namely, "100% Natural."

105.    Plaintiff and New Jersey Subclass Members performed all conditions precedent to Heartland's liability under this contract when they purchased Splenda Naturals Stevia Products.

106.    Heartland breached these express warranties about the products and their qualities because Heartland's statements about the Splenda Naturals Stevia Products were false and the products do not conform to Heartland's affirmations and promises described above. Plaintiffs and other New Jersey Subclass Members would not have purchased the Splenda Naturals Stevia Products had they known the true nature of the Splenda Naturals Stevia Products.

107.    Heartland received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

108.    As a result of Defendant's breach of warranty, Plaintiff and other New Jersey Subclass Members have been damaged in the amount of the purchase price of the Splenda Naturals Stevia Products at issue, and any consequential damages resulting from the purchases.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

### (On behalf of the Nationwide Class including the Subclasses)

109.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

110.    Heartland marketed Splenda Naturals Stevia Products in a manner conveying to reasonable consumers that the products are "100% natural."

111.    Heartland's misrepresentations regarding the products are material to a reasonable consumer because reasonable consumers would attach importance to such representations and would be induced to act thereon in making purchase decisions.

112.    In selling Splenda Naturals Stevia Products, Heartland acted in the ordinary course of its business and had a pecuniary interest in Plaintiff and Class Members purchasing the Splenda Naturals Stevia Products.

113.    Heartland owed a duty of care to Plaintiff and other Class Members, not to provide them with false information when they were making purchase decisions regarding the Splenda Naturals Stevia Products.

114.    Heartland has in the past, and continues to hold itself out as having specialized expertise as it pertains to the manufacturing of the ingredients in Splenda Naturals Stevia Products.

115. But Heartland knows, or has been negligent in not knowing, that the Splenda Naturals Stevia Products are not "100% Natural." Heartland had no reasonable grounds for believing its misrepresentations are not false and misleading.

116. Heartland intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representation on Splenda Natural Stevia's Product labeling and packaging.

117. Plaintiff and other Class Members have reasonably and justifiably relied on Heartland's misrepresentations when purchasing the Splenda Naturals Stevia Products, and had the correct facts been known, would not have purchased the Splenda Naturals Stevia Products at the prices at which they were offered.

118. Therefore, as a direct and proximate result of Heartland's negligent misrepresentations, Plaintiff and other Class Members have suffered economic losses and other general and specific damages, in the amount of the Splenda Naturals Stevia Products' purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### Intentional Misrepresentation

### (On behalf of the Nationwide Class including the Subclasses)

119. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

120. Heartland marketed Splenda Naturals Stevia in a manner conveying to reasonable consumers that the Splenda Naturals Stevia Products are "100% natural." However, the products

contain synthetic ingredients. Therefore, Heartland has made misrepresentations about the Splenda Naturals Stevia Products.

121.     Heartland's misrepresentations are material to a reasonable consumer because they relate to the naturalness of the Splenda Naturals Stevia Products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

122.     At all relevant times, Heartland knew that the misrepresentations were misleading, or has acted recklessly in making the misrepresentations, without regard to their truth.

123.     Heartland intends that Plaintiff and other consumers rely on these misrepresentations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Splenda Naturals Stevia Products' packaging.

124.     Plaintiff and other Class Members have reasonably and justifiably relied on Heartland's intentional misrepresentations when purchasing the Splenda Naturals Stevia Products; had the correct facts been known, they would not have purchased the Splenda Naturals Stevia Products at the prices at which the Splenda Naturals Stevia Products were offered.

125.     Therefore, as a direct and proximate result of Coca-Cola's intentional misrepresentations, Plaintiff and other Class Members have suffered economic losses and other general and specific damages, in the amount of the Splenda Naturals Stevia Products' purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**Unjust Enrichment**

**(On behalf of the Nationwide Class including the Subclasses)**

126.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

127.    Plaintiff lacks an adequate remedy at law.

128.    Plaintiff and others conferred upon Heartland an economic benefit, in the form of profits resulting from the purchase and sale of Splenda Naturals Stevia Products, including through an increased market and market share.

129.    Heartland's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and other Class Members' purchases of the Splenda Naturals Stevia Products, and the economic benefits conferred on Heartland are a direct and proximate result of its unlawful and inequitable conduct.

130.    It would be inequitable, unconscionable, and unjust for Heartland to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

131.    As a direct and proximate result of Heartland's unjust enrichment, Plaintiff and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Heartland as a result of such business practices, and such other relief as the Court deems just and proper to remedy Heartland's unjust enrichment.

## **PRAYER FOR RELIEF**

132.    Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Heartland as to each and every cause of action, and the following remedies:

        a.    An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

        b.    An Order requiring Heartland to bear the cost of Class Notice;

        c.    An Order compelling Heartland to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;

        d.    An Order requiring Heartland to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

        e.    An Order requiring Heartland to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be unjust, plus pre-and post-judgment interest thereon;

        f.    An Order requiring Heartland to pay compensatory, statutory, and punitive damages as permitted by law, plus pre-and post-judgment interest thereon;

        g.    An award of attorneys' fees and costs; and

        h.    Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

133. Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: April 11, 2024

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

**CONSUMER LAW ADVOCATE, PLLC**
MATTHEW PETERSON (*phv forthcoming*)
*mtp@lawsforconsumers.com*
225 1st Ave. N.
St. Petersburg, FL 33701
(815) 999-9130

***Counsel for Plaintiff***