UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| METE KARABAS, on behalf of himself, all others similarly situated, and the general public,<br><br>     Plaintiff,<br><br>v.<br><br>TC HEARTLAND LLC,<br><br>     Defendant. | Case No. 1:24-cv-2722-AMD-VMS<br><br>The Honorable Ann M. Donnelly |

**MEMORANDUM OF LAW IN SUPPORT OF TC HEARTLAND LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 923-2765
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
TC Heartland LLC

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.   Plaintiff Has Not Plausibly Alleged That the Phrase "100% Natural" Is Deceptive. ......... 6

    A.   Plaintiff has not plausibly alleged that reasonable consumers would regard the two ingredients in Splenda Naturals Stevia as "synthetic" or "unnatural." ...... 7

    B.   The USDA and FDA definitions Plaintiff cites do not suggest that the use of the statement "100% natural" is likely to mislead reasonable consumers. ...... 10

II.   Even if the "100% Natural" Statement Is Ambiguous, the Remainder of the Labeling Clarifies Its Meaning and Defeats Any Claim of Deception. ........................... 13

    A.   To the extent that the phrase "100% Natural" is ambiguous, the labeling clarifies to consumers exactly what this phrase means. ....................................... 14

    B.   Plaintiff's efforts to sidestep TC Heartland's clarification of the term "100% Natural" are unavailing. ........................................................................... 17

III.   Plaintiff Has Not Plausibly Alleged That He Suffered a Cognizable Economic Injury. ........................................................................................................................... 21

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................7

*Axon v. Citrus World, Inc.,*
    354 F. Supp. 3d 170 (E.D.N.Y. 2018) ..................................................9

*Baines v. Nature's Bounty (NY), Inc.,*
    No. 23-710, 2023 WL 8538172 (2d Cir. Dec. 11, 2023)......................18

*Belcastro v. Burberry Ltd.,*
    No. 16-1080, 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017)............23, 24

*Binder v. Premium Brands Opco LLC,*
    No. 23-3939, 2024 WL 2978506 (S.D.N.Y. June 11, 2024) ................22

*Bustamante v. KIND, LLC,*
    100 F.4th 419 (2d Cir. 2024) ..................................................6, 7, 8, 15

*Bynum v. Family Dollar Stores, Inc.,*
    592 F. Supp. 3d 304 (S.D.N.Y. 2022)............................................14, 15

*Chimienti v. Wendy's Int'l, LLC,*
    698 F. Supp. 3d 549 (E.D.N.Y. 2023) ................................................14

*Colpitts v. Blue Diamond Growers,*
    527 F. Supp. 3d 562 (S.D.N.Y. 2021)................................................23

*Daniel v. Mondelēz Int'l, Inc.,*
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................7, 8

*Dinan v. Sandisk LLC,*
    No. 18-5420, 2019 WL 2327923 (N.D. Cal. May 31, 2019)...............19

*Dumas v. Diageo PLC,*
    No. 15-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016)..................20

*Eberhart v. LG Elecs. USA, Inc.,*
    No. 15-1761, 2015 WL 9581752 (D.N.J. Dec. 30, 2015).....................6

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.,*
    No. 19-2886, 2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021) ..............18

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)...................................................................... *passim*

*Foster v. Whole Foods Mkt. Grp., Inc.*,
No. 23-285, 2023 WL 8520270 (2d Cir. Dec. 8, 2023)................................... *passim*

*In re Gerber Products Co. Heavy Metals Baby Food Litigation*,
No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022)....................................24

*Hardy v. Olé Mexican Foods, Inc.*,
No. 22-1805, 2023 WL 3577867 (2d Cir. May 22, 2023)....................................18

*Harris v. Mondelēz Global LLC*,
No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020)....................................6

*Henry v. Nissin Foods (U.S.A.) Co.*,
No. 22-363, 2023 WL 2562214 (E.D.N.Y. Mar. 17, 2023)....................................17

*Kelly v. Beliv LLC*,
No. 21-8134, 2024 WL 1076217 (S.D.N.Y. Mar. 12, 2024)....................................25

*Kelly v. Cape Cod Potato Chip Co.*,
81 F. Supp. 3d 754 (W.D. Mo. 2015) ...........................................................8, 11, 12

*In re KIND LLC "Healthy & All Natural" Litig.*,
627 F. Supp. 3d 269 (S.D.N.Y. 2022)....................................................................12

*La Rosa v. Abbott Labs., Inc.*,
No. 22-5435, 2024 WL 2022297 (E.D.N.Y. May 7, 2024)....................................9

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ........................................................................22

*Ma v. Harmless Harvest, Inc.*,
No. 16-7102, 2018 WL 1702740 (E.D.N.Y. Mar. 31, 2018)....................................21

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018).............................................................................18, 19

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ................................................................................24

*Montgomery v. Stanley Black & Decker, Inc.*,
No. 23-735, 2024 WL 939151 (2d Cir. Mar. 5, 2024)....................................19, 20

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ..................................................................................9

*Mustakis v. Chattem, Inc.*,
No. 20-5895, 2022 WL 714095 (E.D.N.Y. Mar. 9, 2022).....................................8, 9

*Newton v. Kraft Heinz Foods Co.*,
No. 16-4578, 2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018)...........................9, 15

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)..............................................................................23

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ...................................................................................20, 22

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019)..............................................................9, 10

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................11

*In re Plum Baby Food Litig.*,
637 F. Supp. 3d 210 (D.N.J. 2022) ......................................................................26

*Rooney v. Cumberland Packing Corp.*,
No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012).........................................8

*Sabo v. Wellpet, LLC*,
282 F. Supp. 3d 1040 (N.D. Ill. 2017) .................................................................26

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)..................................................................................24

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ........................................................................................22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................22

*Tyrnauer v Ben & Jerry's Homemade, Inc.*,
--- F. Supp.3d ----, 2024 WL 3346840 (D. Vt. July 8, 2024) .....................23, 24, 25

*Vaglica v. Reckitt Benckiser LLC*,
699 F. Supp. 3d 200 (E.D.N.Y. 2023) ..................................................................6

*Valencia v. Snapple Beverage Corp.*,
No. 23-1399, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024)......................... *passim*

*Warren v. Whole Foods Mkt. Grp. Inc.*,
574 F. Supp. 3d 102 (E.D.N.Y. 2021) .................................................................13

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011) ......................................................................7

*Wynn v. Topco Assocs., LLC*,
   No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ..................................13

**Statutes**

7 U.S.C. §§ 6501 *et seq.* ...........................................................................................11

N.J.S.A. §§ 56:8–1 *et seq.* ............................................................................5, 6, 22

N.Y. GBL § 349 ......................................................................................................5, 6

N.Y. GBL § 350 ......................................................................................................5, 6

**Other Authorities**

21 C.F.R. § 101.9 ......................................................................................................19

Fed. R. Civ. P. 23 ......................................................................................................21

## INTRODUCTION

This consumer class action alleges that TC Heartland mislabeled its Splenda Naturals Stevia—a low-calorie, stevia-based sweetener that TC Heartland sells in addition to its sucralose-based Splenda sweeteners—as "100% Natural." As the Court noted at the pre-motion conference, there are many "natural" cases in which a court cannot determine at the pleading stage that the defendant's labeling is unlikely to mislead reasonable consumers. This is not that kind of case.

Unlike the products at issue in many "natural" cases, which contain a laundry list of allegedly "synthetic" compounds, Splenda Naturals Stevia contains only two ingredients: stevia leaf extract and erythritol. Both ingredients are derived from plants and free of genetically modified organisms. Moreover, even though Plaintiff concedes that there is no FDA regulation defining the term "natural," TC Heartland's labeling nonetheless includes a detailed explanation of why the only two ingredients in the product are "natural." As the labeling states:

> *SPLENDA® Naturals Stevia is made with two non-GMO sweeteners: stevia leaf extract and erythritol. Stevia leaves are steeped in hot water to extract the sweet parts of the leaf and then undergo a process to separate, filter and purify the extract. Erythritol is produced by a fermentation process. Please see our website for more information on our natural standard: **www.splenda.com/naturals.**

Compl. ¶ 42 (bold font in original).[1] In other words, the labeling informs consumers *exactly* what ingredients the product contains, how those ingredients are produced, and where consumers can find more information about those ingredients if they are so inclined. This language—which TC Heartland included on the labeling even though it has no legal obligation to do so—would disabuse any reasonable consumer from believing that the product was completely unprocessed.

---

[1] This language differs slightly from the language in Paragraph 41 of the complaint, which purports to reflect the language on the packaging but differs slightly from the language that appears on the image of the packaging Plaintiff depicts. *Compare* Compl. ¶ 41 *with id.* ¶ 42.

Plaintiff nonetheless claims that TC Heartland misled consumers by labeling the product with the phrase "100% Natural." According to Plaintiff, this phrase is misleading because "[t]he processes used to produce these ingredients do not occur in nature" and are instead "synthetic processes undertaken in industrial factories." *Id.* ¶ 25. This theory of deception is fatally flawed.

The central premise of Plaintiff's lawsuit is that reasonable consumers would expect the ingredients in a food labeled as "100% Natural" not to have undergone any processing. *Id.* ¶ 45. But that premise is implausible. The FDA has taken the position that a food can be labeled as "natural," even if it contains processed ingredients, so long as it does not include any substance "that would not normally be expected to be in that food"—which Plaintiff has not alleged and cannot allege is the case here. Ex. 1. And common sense, which this Court must apply in ruling on a motion to dismiss, makes clear that no reasonable consumer would believe that a low-calorie sweetener processed into a fine white powder and sold on supermarket shelves is completely free of ingredients that have undergone any degree of human processing. Courts across the country have repeatedly applied this principle to dismiss product mislabeling cases challenging representations that a product is "natural." This Court should do the same here.

Moreover, even if Plaintiff's interpretation of the phrase "100% Natural" were plausible in a linguistic vacuum, that is not the relevant inquiry. What matters is whether TC Heartland's labeling would mislead reasonable consumers when viewed in context and as a whole. Here, the labeling includes prominent language that specifies *exactly* what TC Heartland means when it refers to the product as "100% Natural." It is irrelevant whether Splenda Naturals Stevia satisfies Plaintiff's subjective definition of "100% Natural." The packaging clarifies exactly what *TC Heartland* means by the phrase "100% Natural," and Plaintiff does not—and cannot—allege that the product is different from what TC Heartland represented it to be.

This language on the back label is the precise sort of "clarifying language" that will "defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).[2]  Indeed, another federal court has found that virtually identical language on a competitor's product was sufficient to dispel any confusion about what the manufacturer meant when it labeled its product as "Nature's Calorie-Free Sweetener." *See* Exs. 2–3.  That reasoning applies with equal force here, and it is fatal to Plaintiff's claim that TC Heartland misrepresents the nature of its product.

Leaving aside his failure to allege that TC Heartland's labeling is deceptive, Plaintiff's claims also fail because he has not plausibly alleged that TC Heartland's use of the phrase "100% Natural" resulted in any cognizable injury—as Plaintiff must to satisfy Article III and New York's "actual injury" requirement.  Whether one conceptualizes Plaintiff's alleged economic injury as a "benefit of the bargain" injury, a "price premium" injury, or something else, it rests on the premise that the product was "worth less" than the amount Plaintiff paid and that he "did not receive what [he] paid for."  Compl. ¶¶ 64–65.  But that theory of injury is unavailing absent any plausible allegation that TC Heartland sold him a different product than the one it promised: a plant-based, minimally processed, low-calorie sweetener.  And to the extent Plaintiff alleges that the product "cost[s] more than similar products without misleading labeling" (*id.* ¶ 62), that theory fails because he has not identified a "similar" product (or *any* product) that satisfies his idiosyncratic definition of "100% Natural."  Courts faced with similar lawsuits routinely reject this illogical theory of economic injury.  This Court should follow suit.

## BACKGROUND

Splenda Naturals Stevia is a low-calorie sweetener available in stores and online retailers throughout the United States.  It is a plant-based, non-GMO alternative to synthetic low-calorie

---

[2] Unless noted, all emphasis is added and all citations and internal quotation marks are omitted.

sweeteners such as Splenda (which contains sucralose), Equal (which contains aspartame), or Sweet 'N Low (which contains saccharin). Until 2023, certain versions of the labeling included the phrase "100% Natural" on the front panel. *See* Compl. ¶ 53.

Splenda Naturals Stevia "contains just two ingredients: Erythritol and Stevia Leaf Extract." *Id.* ¶ 25. As the label explains, the "[s]tevia leaves are steeped in hot water to extract the sweet part of the leaf and then undergo a process to separate, filter, and purify the extract." *Id.* ¶ 41. The label also includes a link to TC Heartland's website, which notes that the "[d]ried stevia leaves are steeped in hot water to extract glycosides: the sweet tasting part of the leaf. The water is then filtered so the remaining material can be isolated and purified. The process, and processing aids, produce a crystalized sweet extract of the leaf." *Id.* ¶¶ 26, 41; *see also* Ex. 4 (compilation of pages from TC Heartland's website).

The other ingredient in the product is erythritol, which the label states is "produced by a fermentation process." Compl. ¶ 42. As Plaintiff notes in the complaint, one version of TC Heartland's website (which the label references) notes that erythritol "is a natural sugar alcohol fermented from sugars and found in many vegetables and fruit"; that the erythritol in the product is "produced by a fermentation process"; and that it is "filtered and dried into crystals" before being incorporated into the finished product. *Id.* ¶ 38.

Plaintiff does not dispute that the stevia leaf extract is produced by steeping stevia leaves in hot water and purifying the extract. Nor does Plaintiff dispute that the erythritol is produced via a fermentation process. Plaintiff nonetheless alleges that the stevia leaf extract and erythritol are "non-natural, synthetic ingredients" that render the use of the phrase "100% Natural" deceptive. Compl. ¶ 2. Relying on several photographs and diagrams of unknown origin, Plaintiff claims that the stevia leaf extract is produced through an "industrial process" that renders it "synthetic." *See*

*id.* ¶¶ 26–37.  Plaintiff similarly alleges that the erythritol is "synthetically manufactured" because the fermentation and extraction process "is not the same process used in nature." *Id.* ¶ 40.  And because the stevia leaf extract and erythritol are allegedly "synthetic," Plaintiff asserts that it is misleading for TC Heartland to label Splenda Naturals Stevia as "100% Natural." *Id.* ¶ 45.

Plaintiff claims that his purchase of the product resulted in an economic injury.  As an "avid tea and coffee drinker" who "prefers to sweeten his tea and coffee with all-natural non-nutritive sweeteners," Plaintiff alleges that he purchased the product based on the representation that it was "100% Natural." *Id.* ¶¶ 57–60.  He claims that he "would not have purchased" the product, or "would not have been willing to pay the price he paid," had he known the product contains allegedly "synthetic" ingredients. *Id.* ¶ 61.  And he also alleges that "Splenda Naturals Stevia cost more than similar products without misleading labeling"—even though he does not identify a single "similar" product that would satisfy his definition of "100% Natural." *Id.* ¶ 62.

Based on these allegations, Plaintiff asserts three sets of claims against TC Heartland.  First, he asserts claims for violations of sections 349 and 350 of the New York General Business Law ("GBL") on behalf of a putative "New York Subclass." *See* Compl. ¶¶ 70, 79–91.  Second, he asserts claims for violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8–1 *et seq.*, and for breach of express warranty on behalf of a putative "New Jersey Subclass." *See* Compl. ¶¶ 70, 92–108.  Third, he asserts a claim for intentional misrepresentation on behalf of a putative nationwide class.[3] *See id.* ¶¶ 69, 119–25.

---

[3] Plaintiff's complaint also asserts claims for negligent misrepresentation and unjust enrichment. *See* Compl. ¶¶ 109–18, 126–31.  Following the pre-motion conference, Plaintiff withdrew these claims, along with his request for injunctive relief. *See* ECF No. 17.

**ARGUMENT**

**I.    Plaintiff Has Not Plausibly Alleged That the Phrase "100% Natural" Is Deceptive.**

To state a claim under sections 349 and 350 of the GBL, Plaintiff must plausibly allege that TC Heartland's labeling is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink*, 714 F.3d at 741; *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) ("Deception is governed by the reasonable consumer standard."). Similarly, Plaintiff's claim under the NJCFA requires him to allege that TC Heartland's labeling "could mislead the average reasonable consumer." *Eberhart v. LG Elecs. USA, Inc.*, No. 15-1761, 2015 WL 9581752, at *4 (D.N.J. Dec. 30, 2015); *see also Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 28, 2020) (noting that under the "consumer protection statutes from forty states," including New Jersey, "the critical issue . . . is whether a reasonable consumer would be misled"). And because Plaintiff's breach of express warranty rests on the premise that the "true nature" of Splenda Naturals Stevia does not "conform to Heartland's affirmations and promises" (Compl. ¶ 106), that claim necessarily fails if Plaintiff cannot plausibly allege that TC Heartland's labeling is likely to mislead reasonable consumers. *See, e.g.*, *Vaglica v. Reckitt Benckiser LLC*, 699 F. Supp. 3d 200, 210 (E.D.N.Y. 2023) (holding that the plaintiff's breach of warranty claim "fail[ed] as a matter of law" when the product's labeling "would not materially mislead a reasonable consumer").

Critically, the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011); *see also Bustamante*, 100 F.4th at 426 ("[T]his standard requires more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."). Consistent with that principle, this Court must also apply "common sense" in determining whether Plaintiff's claims of deception are plausible. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009); *see also Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A reasonable consumer does not lack common sense."). And it is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741. Viewed through that lens, Plaintiff has not come close to stating a plausible claim of deception against TC Heartland.

A. **Plaintiff has not plausibly alleged that reasonable consumers would regard the two ingredients in Splenda Naturals Stevia as "synthetic" or "unnatural."**

The crux of Plaintiff's lawsuit is that the phrase "100% Natural" is misleading because the stevia leaf extract and erythritol in Splenda Naturals Stevia are "synthetic ingredients." Compl. ¶ 25. Critically, Plaintiff does not claim that stevia leaf extract and erythritol are *inherently* "synthetic" ingredients. Instead, he alleges that they are synthetic because the "processes used to produce these ingredients do not occur naturally in nature" and are "synthetic processes undertaken in industrial factories." *Id.* ¶ 46. But this theory of deception fails because no reasonable consumer would share Plaintiff's absolutist understanding of the term "natural."

At the outset, the notion that a "natural" product cannot contain an indisputably natural ingredient—like a stevia leaf—that has undergone *any* degree of human processing defies common sense, which this Court must apply in weeding out implausible claims of deception. *See Iqbal*, 556 U.S. at 679; *Daniel*, 287 F. Supp. 3d at 193. In contrast to a stalk of sugarcane or a bottle of honey, a reasonable consumer understands that a pre-packaged, powdered, low-calorie sweetener will have undergone at least some processing. For that reason, courts routinely find Plaintiff's absolutist interpretation of the term "natural" implausible as applied to "mass-produced" products. *Bustamante*, 100 F.4th at 433 (noting that the plaintiff's definition of "natural" as "existing in or caused by nature" or "not made or caused by humankind" was "not useful when applied to a mass-produced snack bar wrapped in plastic," which is "clearly made by humans"); *see also, e.g.*,

*Mustakis v. Chattem, Inc.*, No. 20-5895, 2022 WL 714095, at *3 (E.D.N.Y. Mar. 9, 2022) (dismissing a lawsuit challenging the labeling of "Selsun Blue Naturals" shampoo and noting that "it is implausible that a reasonable consumer would be misled into believing that the Product contains no synthetic ingredients"); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) (dismissing lawsuit challenging labeling of "all natural" potato chips and holding that the definition of a "natural" product as one "existing [in] or produced by nature" was implausible as applied to potato chips, "which of course do not exist or occur in nature").

Indeed, faced with a similar lawsuit challenging the labeling of "Sugar in the Raw," another court found that a reasonable consumer "could not conclude that the product contains completely unprocessed or unrefined sugar cane." *Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012). Even though the label "state[d] that the product is natural premium turbinado cane sugar," the court concluded that a reasonable consumer would not conclude that "this is the result of less refinery or less processing" absent an express representation to that effect. *Id.* Here too, a reasonable consumer would not construe the term "100% Natural" to mean that a stevia-based sweetener was "completely unprocessed." *Id.*

That is particularly true because stevia-based sweeteners are "niche, specialty product[s]" designed to appeal to a narrow subset of consumers. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021) (affirming dismissal of lawsuit challenging labeling of Manuka honey and noting that "an average consumer of Manuka honey would likely know more than most about the production of the product and the impossibility of a honey that is 100% derived from Manuka flower nectar"); *see also La Rosa v. Abbott Labs., Inc.*, No. 22-5435, 2024 WL 2022297, at *6 (E.D.N.Y. May 7, 2024) ("[I]n the context of a niche, specialty product, purchasers exhibit a higher degree of care."). Those consumers would understand that stevia is 200 to 400 times sweeter than

table sugar by volume. *See* Ex. 5. Those consumers would also understand that a stevia-based sweetener must be extracted from stevia leaves and purified before it is suitable for use as a sweetener. *See id.* And for that reason, those consumers would understand that a stevia-based sweetener available in a supermarket must undergo at least some degree of man-made processing.

Faced with similar lawsuits, courts in the Second Circuit have repeatedly rejected the "absolutist" notion that a "natural" product cannot contain any substance that any consumer might arguably regard as "synthetic."[4] *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (dismissing lawsuit challenging "natural" labeling due to the alleged presence of herbicide residues). For example, in *Valencia v. Snapple Beverage Corp.*, the court dismissed a lawsuit alleging that Snapple mislabeled its juices as "All Natural," even though they contained allegedly "industrially produced" citric acid. No. 23-1399, 2024 WL 1158476, at *1 (S.D.N.Y. Mar. 18, 2024). Even assuming that the citric acid was "industrially made by fermentation of the *Aspergillus niger* mold," the court found that this would not establish that "a reasonable consumer acting reasonably would regard as unnatural citric acid derived from *Aspergillus niger*—itself a natural product." *Id.* at *6. Absent any plausible explanation of how the "citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits," the court found that "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it." *Id.*

---

[4] *See also, e.g.*, *Mustakis*, 2022 WL 714095, at *3 (dismissing lawsuit alleging that the phrase "Selsun Blue Naturals" misled consumers into believing that the defendant's shampoo "contains no synthetic ingredients"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) (dismissing lawsuit alleging that the brand name "Florida's Natural" was misleading because the oranges used to make the juice contained trace amounts of herbicides); *Newton v. Kraft Heinz Foods Co.*, No. 16-4578, 2018 WL 11235517, at *8–9 (E.D.N.Y. Dec. 18, 2018) (dismissing lawsuit alleging that sour cream was mislabeled as "natural" because it was manufactured from milk produced by cows who ate genetically modified organisms).

That reasoning applies with equal force here. Even if the processes TC Heartland uses to extract the sweetness from the stevia leaf and to ferment the erythritol might not be the same processes that occur in nature, that does not mean that a reasonable consumer would regard these ingredients as "unnatural" or "synthetic"—particularly absent any explanation of how these ingredients "differ[] chemically" from the ones found in nature. *Id.* And that is particularly true given the nature of the product: a pre-packaged, mass-manufactured, stevia-based sweetener sold in grocery stores. No reasonable consumer would share Plaintiff's "absolutist" view that a "natural" sweetener cannot contain any ingredient that has undergone any degree of human processing. *Parks*, 377 F. Supp. 3d at 247. That is fatal to Plaintiff's claims of deception.

**B.   The USDA and FDA definitions Plaintiff cites do not suggest that the use of the statement "100% natural" is likely to mislead reasonable consumers.**

Unable to tether his interpretation of "natural" to that of a reasonable consumer, Plaintiff relies heavily on two sources: (1) the USDA's definition of "synthetic" ingredients; and (2) the FDA's informal policy governing the use of the term "natural." *See* Compl. ¶¶ 21–23. But neither of these regulatory definitions supports Plaintiff's claims of deception. If anything, they confirm that there is no regulation governing the use of the term "natural" and no uniform definition of a "natural" food or ingredient.

Plaintiff first relies on a provision of the Organic Foods Production Act ("OFPA"), 7 U.S.C. §§ 6501 *et seq.*, defining the term "synthetic" and draft USDA guidance distinguishing "synthetic" and "nonsynthetic" substances. *See* Compl. ¶¶ 21–22. But neither the OFPA nor the USDA's guidance govern the use of "natural" claims on food labeling. Instead, they concern the use of the term "organic." *See* Ex. 6 ("This guidance describes the procedure used to classify materials as synthetic or nonsynthetic . . . under the USDA organic regulations."). TC Heartland does not claim that Stevia Naturals Splenda is an "organic" product, and Plaintiff does not even

*attempt* to articulate how the USDA's definition of an "organic" product has any bearing on what consumers would expect in a product labeled as "natural" or "100% natural."

For that reason, many courts have rejected similar attempts to apply the USDA's "organic" regulations to products labeled as "natural." For example, in *Pelayo v. Nestle USA, Inc.*, the plaintiff alleged that "none of the ingredients in a 'natural' product are 'synthetic' as that term is defined by the National Organic Program ('NOP'), which regulates products labeled as 'organic.'" 989 F. Supp. 2d 973, 979 (C.D. Cal. 2013). But the court rejected this argument and found that the USDA's "definition of 'synthetic' under the NOP does not apply" because the products at issue were "not labeled as 'organic.'" *Id.* Similarly, in *Kelly*, the court rejected the plaintiff's reliance on the "USDA definition of 'synthetic'" as a basis for her claim that the defendant's potato chips were mislabeled as "natural." 81 F. Supp. 3d at 761. As the *Kelly* court explained, the plaintiff's "cited definition . . . is part of the USDA's National Organic Program, which applies to products that are sold, labeled, or represented as 'organic.'" *Id.* But because the plaintiff "did not allege that any of the Chips are represented as 'organic,'" the court concluded that the USDA's "rules and definitions do not apply to them." *Id.* Here too, TC Heartland's Splenda Naturals Stevia products do not purport to be "organic." The USDA's standards for determining whether a product is "organic" have no bearing on whether TC Heartland mislabels its products as "natural."

Although Plaintiff concedes that the FDA has not defined the term "natural," he relies heavily on the FDA's informal policy governing the use of this term. *See* Compl. ¶ 23 ("While the U.S. Food & Drug Administration has not developed a definition for the use of the term 'natural,' it has said that it does not object to the use of the term if the food does not contain *synthetic substances*.") (emphasis in original). But this is a gross oversimplification of the FDA's policy, under which "[t]he FDA has considered the term 'natural' to mean that nothing artificial

or synthetic . . . has been included in, or has been added to, a food *that would not normally be expected to be in that food*."  Ex. 7 (FDA website titled "Use of the Term Natural on Food Labeling"); *see also In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 248 n. 12 (S.D.N.Y. 2022) (noting that this website reflects the FDA's "longstanding guidance").  The FDA has also stated that this policy is "not intended to address food production methods" and that it does not "explicitly address food processing or manufacturing methods."  Ex. 7.

TC Heartland's use of the term "natural" is entirely consistent with this policy.  The two ingredients in the product—stevia leaf extract made through steeping stevia leaves in hot water and erythritol made through fermentation—are undoubtedly ingredients that would "normally be expected to be" present in a mass-manufactured, stevia-based sweetener sold in grocery stores. *See supra* § I.A.  Moreover, Plaintiff's allegation that these ingredients are "synthetic" relies on his allegation that the "processes used to produce these ingredients" are "synthetic processes undertaken in industrial factories."  Compl. ¶ 25.  But the FDA has stated that its policy was "not intended to address food production methods."  Ex. 7; *see also* Ex. 1.

Even if the FDA's policy *did* address food processing methods, none of Plaintiff's allegations suggest that the process that TC Heartland allegedly uses renders the two ingredients in the product "unnatural" or "synthetic."  The process Plaintiff describes in his complaint—which entails mixing stevia leaves with boiling water, filtering the mixture to remove contaminants, collecting the stevia extract on a resin surface, and re-extracting the stevia using alcohol—is not a process that deprives the stevia leaf extract of its "natural" identity.  *See* Compl. ¶¶ 28–35.  It is simply a larger-scale version of a process that any consumer could replicate in his or her kitchen.

Moreover, Plaintiff has not alleged any facts suggesting that the FDA's "informal policy" reflects reasonable consumers' expectations about what ingredients would appear in a "natural"

product. Many courts in New York have dismissed food-labeling lawsuits premised on alleged regulatory violations where the plaintiffs did not plausibly allege "that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also, e.g.*, *Warren v. Whole Foods Mkt. Grp. Inc.*, 574 F. Supp. 3d 102, 113–14 (E.D.N.Y. 2021) (noting that FDA regulations and guidance are not probative of whether a labeling claim is likely to mislead reasonable consumers and collecting cases).

Indeed, the *Valencia* court specifically applied this reasoning in holding that the FDA's policy governing the use of the term "natural" was "irrelevant or at least not dispositive when it comes to determining whether a reasonable consumer would be deceived." 2024 WL 1158476, at *3. "Absent any plausible allegations that the FDA's opinion influences that of the reasonable consumer," the *Valencia* court explained, "it is hard to see what relevance it has." *Id.* at *4. Here too, Plaintiff has not alleged *any* facts suggesting that the FDA's policy governing the use of the term "natural" has any bearing on how reasonable consumers understand the term. As a result, the FDA's policy does not support a plausible claim of deception against TC Heartland.

## II.    Even if the "100% Natural" Statement Is Ambiguous, the Remainder of the Labeling Clarifies Its Meaning and Defeats Any Claim of Deception.

Even if this Court credited Plaintiff's allegation that a reasonable consumer could interpret the phrase "100% Natural" to suggest that none of the ingredients in Splenda Naturals Stevia had undergone any degree of processing, that would not render Plaintiff's claims plausible because the remainder of the packaging clarifies exactly what TC Heartland means by "100% Natural."

It is well-settled that "context is crucial" when assessing whether a label is deceptive and that, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742. One such circumstance occurs when a front-

label claim "might be considered ambiguous." *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-285, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023). So long as the front label is not "affirmatively inaccurate," the presence of "clarifying language that definitively dispels any arguable ambiguity on the front" is fatal to Plaintiff's claims of deception. *Id.*; *see also, e.g.*, *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 560 (E.D.N.Y. 2023) ("[C]ourts within the Second Circuit have continued to recognize that clarification can defeat a claim that a defendant's advertisement is deceptive if the plaintiff challenges an ambiguous representation made in the advertisement."); *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 310–11 (S.D.N.Y. 2022) (similar). That principle is fatal to Plaintiff's claims of deception.

A.     **To the extent that the phrase "100% Natural" is ambiguous, the labeling clarifies to consumers exactly what this phrase means.**

As the Second Circuit has recognized, "consumers have varied understandings of what 'natural' means." *Bustamante*, 100 F.4th at 433 n.9; *see also, e.g.*, *Newton*, 2018 WL 11235517, at *8 ("Whatever connotations a consumer might associate with the product through the use of the word 'natural,' they are values or meanings that are solely within the province of the individual consumer and subject to that consumer's individualized experience."). Even if *some* consumers might arguably interpret the term "Natural" (or the phrase "100% Natural") to mean that a product contains no ingredients that have undergone any degree of man-made processing, other consumers could very easily interpret it in other ways.

For example, a consumer might interpret the term "natural" to mean that the product contains only plant-based ingredients. Another consumer might construe it to mean that it is free of genetically modified ingredients, or to mean that the raw ingredients used in the product must have been derived from natural sources. Given the sheer number of ways in which a reasonable

consumer might define the term "natural," there can be no serious dispute that this term is "susceptible to multiple interpretations"—*i.e.*, ambiguous. *Bynum*, 592 F. Supp. 3d at 311.

Because the phrase "100% Natural" is ambiguous, the relevant question is whether the "clarifying language" on the back label "defeat[s] [Plaintiff's] claim of deception." *Fink*, 714 F.3d at 742. The answer to that question is yes. The back label clarifies that the stevia extract is produced by steeping the leaves in hot water "to extract the sweet parts of the leaf" before "undergo[ing] a process to separate, filter, and purify the extract." Compl. ¶ 42. It also clarifies that the erythritol in the product is "produced by a fermentation process." *Id.* And if a consumer wanted "more information" about how TC Heartland manufactures the product, the label directs the consumer to TC Heartland's website, which provides a wealth of information about Splenda Naturals Stevia and the ingredients in the product. *Id.*; *see also* Ex. 4.

Under similar circumstances, many courts throughout the country have dismissed product mislabeling lawsuits where clarifying language on the back or side of the package eliminated any ambiguity about the meaning of a front-label claim. In *Valencia*, for example, the court applied this reasoning in holding that Snapple's use of the phrase "All Natural" was not misleading, even if the products contained color additives that the plaintiffs regarded as "unnatural." 2024 WL 1158476, at *5. "[I]f any consumers were unclear as to whether 'All Natural' meant that the Products' ingredients were all natural or that no ingredients . . . were included for color," the court explained," they could read the ingredients lists, which make clear that certain natural ingredients are used for color, to clarify their understanding." *Id.* And "even if the labels could be regarded as ambiguous," the court found that "the ingredients lists make clear that some of the natural ingredients are included for color," such that "the labels are not materially misleading." *Id.*

Similarly, in *Foster*, the plaintiff alleged that Whole Foods's fish oil supplements were mislabeled because the front label included the phrases "1000 mg" and "Omega-3s," even though the supplements only contained 300 milligrams of Omega-3s. 2023 WL 8520270, at *1. The Second Circuit affirmed the dismissal of this lawsuit because the "back labeling clearly and accurately states to consumers the supplement facts per serving—namely, that there are 1000mg of Fish Oil, including 300mg of Omega-3s EPA and DHA, per serving." *Id.* at *2. In light of the plaintiff's "failure to explain that the front label was likely to mislead a reasonable consumer" and the "clearly accurate information on the back of the label," the court found that the plaintiff had not stated a plausible claim of deception. *Id.*

The court reached the same conclusion in *Henry v. Nissin Foods (U.S.A.) Co.*, in which the plaintiffs alleged that the phrase "No Added MSG" was misleading because the products allegedly contained free glutamates that posed the same risks of "adverse health effects" as added MSG. No. 22-363, 2023 WL 2562214, at *1–2 (E.D.N.Y. Mar. 17, 2023), Even if "a reasonable consumer could plausibly believe, based on the 'No Added MSG' label, that no ingredients containing free glutamates were used in the Product," the court found that this was "not the end of the inquiry." *Id.* at *6. All this would establish, the court explained, is that "[t]he phrase 'No Added MSG' is ambiguous" and that reasonable consumers could interpret it in multiple ways. *Id.* at *7. And because each product label stated that the product "contains small amounts of naturally occurring glutamates," the court found that "[a] reasonable consumer would . . . reject Plaintiff's interpretation and turn to one that can be reconciled with the clear, unambiguous disclaimer." *Id.*

So too here. Even if Plaintiff's proffered interpretation of "100% Natural" were plausible (it is not), it is certainly not the *only* reasonable interpretation of the phrase. And the disclaimer on the back of TC Heartland's product is far more explicit and robust than those at issue in *Valencia*,

*Foster*, and *Henry*. That disclaimer makes crystal clear that the stevia leaf extract and erythritol have been processed using processing aids. The label would therefore disabuse any consumer of the notion that the product is free of any processed ingredients whatsoever.

In other words, this is not a case where a consumer must conduct "investigation beyond the grocery store" or possess "knowledge of food chemistry" to determine whether the product's ingredients are "natural." Compl. ¶ 20. That consumer could determine the answer by simply reading the label, which describes exactly how the two ingredients in the product are processed. That "clarifying language" on the label "defeat[s]" any claim of deception. *Fink*, 714 F.3d at 742.

**B.      Plaintiff's efforts to sidestep TC Heartland's clarification of the term "100% Natural" are unavailing.**

Faced with clarifying language that explains exactly what TC Heartland means by the phrase "100% Natural," Plaintiff attempts to sidestep the effect of this language in several different ways. *See* Compl. ¶¶ 41–54. But none of Plaintiff's allegations—which are disguised legal conclusions, rather than well-pleaded factual allegations—suggest that the labeling is deceptive.

First, Plaintiff asserts that "[r]easonable consumers are not expected to search the back and sides of products for more information about the product that could contradict other representations made on the label." *Id.* ¶ 47; *see also* ECF No. 15 (asserting that the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), forecloses TC Heartland's reliance on this clarifying language). But the Second Circuit has repeatedly emphasized that *Mantikas* does not stand for the categorical proposition that "a front-label representation about *any* aspect of a product

can never be clarified by a representation made elsewhere on a product's packaging." *Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023).[5]

*Mantikas* stands only for the narrow and uncontroversial rule that "a small-print ingredient list cannot 'cure' front-label representations that are otherwise highly deceptive." *Hardy*, 2023 WL 3577867, at *3. In contrast, "when the front of the package is better characterized as ambiguous than misleading," courts can—and will—consider whether clarifying information elsewhere on the package dispels any alleged deception. *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021); *see also Foster*, 2023 WL 8520270, at *2 (holding that the district court properly considered clarifying language on the back label because "the case before us does not involve an affirmatively inaccurate statement," even if "the representation on the front label might be considered ambiguous"). Here, as explained above, the phrase "100% Natural" is ambiguous because consumers can interpret this statement in many different ways. *See supra* § II.A. Because the challenged "100% Natural" statement is ambiguous and not affirmatively misleading, *Mantikas* does not bar this Court from considering the "clarifying language" on the back label and the website. *Fink*, 714 F.3d at 742.

<u>Second</u>, Plaintiff asserts that the "disclaimer is in small print on the back or side of the product's packaging" and that "many consumers might not see it, particularly before making a first purchase." Compl. ¶ 48; *see also id.* ¶ 47 (characterizing this disclaimer as "fine-print information"). But calling the disclaimer "small print" or "fine-print" does not make it so. To the

---

[5] *See also Foster*, 2023 WL 8520270, at *2 ("[The plaintiff] argues that *Mantikas* rejected the proposition that if the front labeling of a product is ambiguous, additional clarification on the back can render the front labeling not deceptive. That is not what *Mantikas* held."); *Baines v. Nature's Bounty (NY), Inc.*, No. 23-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (affirming dismissal of false advertising claim where the "back label . . . cures any potential ambiguity from the front label" and rejecting the plaintiffs' reliance on *Mantikas*).

contrary, Plaintiff's own complaint confirms that the disclaimer is in clear, legible text that is at least as large as the text in the FDA-mandated Nutrition Facts panel—the primary vehicle through which manufacturers convey nutritional information to consumers. *See id.* ¶ 42; *see also* 21 C.F.R. § 101.9(d)(iii) (setting forth "type size" requirements for the Nutrition Facts panel).

In addition to being implausible as a matter of fact, this allegation is also wrong as a matter of law. The Second Circuit has made clear that "fine print may clarify an ambiguous label on packaging" and that a plaintiff must "allege more than the bare fact that the disclaimer was in fine print and located at the back of the packaging." *Montgomery v. Stanley Black & Decker, Inc.*, No. 23-735, 2024 WL 939151, at *2 (2d Cir. Mar. 5, 2024). And other courts have agreed that even "fine print" disclaimers can clarify an otherwise ambiguous labeling claim and defeat a claim of deception. *See, e.g.*, *Dinan v. Sandisk LLC*, No. 18-5420, 2019 WL 2327923, at *2 (N.D. Cal. May 31, 2019) (dismissing lawsuit in light of a back-label disclosure that was "in fine print, but legible"); *Dumas v. Diageo PLC*, No. 15-1681, 2016 WL 1367511, at *5 (S.D. Cal. Apr. 6, 2016) (dismissing lawsuit in light of a back-label disclosure, even though "the words [were] small").

Here too, there is no indication that a reasonable consumer "could not see the clarifying language" on the back label, "that it was obscured," or that "a consumer would see it but would be confused by its terms." *Montgomery*, 2024 WL 939151 at *2 n.2. To the contrary, this language is legible, unobscured, and explains exactly how the stevia leaf extract and erythritol are made. *See* Compl. ¶ 42. That is all the law requires for this clarifying language to be effective.

Third, Plaintiff alleges that the label and the website include "only . . . partial disclosures, while continuing to omit material information." *Id.* ¶ 49. But New York law makes clear that manufacturers like TC Heartland generally have no duty to "guarantee that each consumer has all relevant information specific to [his or her] situation." *Oswego Laborers' Local 214 Pension Fund*

*v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). And that rule makes particular sense as applied to clarifying language on a product label, where including every single conceivable piece of information a consumer might want to know would make the label unwieldy and undermine the goal of providing clear, accessible information that further clarifies the meaning of the front label.[6]

Moreover, TC Heartland's disclosures are virtually identical to those that another federal court has deemed adequate. Over a decade ago, a federal judge in Hawaii approved a class settlement that required one of TC Heartland's competitors, Cargill, to label its stevia-based sweeteners just as TC Heartland *already* labels its own products. *See* Exs. 2–3. That settlement permitted Cargill to label its Truvia sweeteners, which contain stevia and erythritol, with the phrase "Nature's Calorie-Free Sweetener" so long as Cargill accompanied that statement with the text "*For more information on our ingredients go to Truvia.com/FAQ."[7] *See* Ex. 2, at 42–43. It also permitted Cargill to state that "Erythritol is a natural sweetener, produced by a fermentation process." *Id.* at 43. And while it prohibited Cargill from stating that the process of extracting stevia from the leaves was "similar to making tea," it specifically allowed Cargill to state that the

---

[6] It is not even clear what additional information Plaintiff believes TC Heartland would need to disclose or why that information is necessary to clarify the meaning of the phrase "100% Natural." For example, Plaintiff faults TC Heartland for stating that it uses "processing aids" to produce stevia leaf extract but failing to "disclose that these aids include chemicals like pure ethanol." Compl. ¶ 49. But if one credits Plaintiff's view that a "100% Natural" product cannot include *any* substance that has been processed in a manner that does not occur in nature, the precise identity of the "processing aid" has no bearing on whether the substance is "natural."

[7] Like TC Heartland's website, the Truvia website notes that "stevia leaves are harvested and dried," that they are "then steeped in hot water," and that "[t]he resulting liquid extract is filtered, purified, and dried, resulting in the crystalized stevia leaf extract." *Truvia® FAQ: Health Information & Safety*, https://www.truvia.com/faq (last visited Aug. 15, 2024). It also notes that the erythritol is "produced through a fermentation process" in which "a yeast digests a simple sugar called dextrose and other nutrients and produced erythritol," which is then "filtered and dried into crystals." *Id.* Unsurprisingly, these descriptions mirror those on TC Heartland's website, which also includes an "FAQ" section describing these ingredients. *See* Ex. 4.

stevia leaves are steeped in water. *Id.* The language that court approved is virtually identical to the language TC Heartland uses—and that Plaintiff now claims is inadequate.

In approving this settlement, the court specifically found that the relief it provided to consumers—including the labeling changes it mandated—was "fair, reasonable, and adequate." Ex. 3, at 9; *see also* Fed. R. Civ. P. 23(e). And if the court believed that the injunctive relief this settlement provided was "worthless," it would presumably have "decline[d] to find that its terms are fair, reasonable and adequate." *Ma v. Harmless Harvest, Inc.*, No. 16-7102, 2018 WL 1702740, at *6 (E.D.N.Y. Mar. 31, 2018) (declining to approve settlement that "provide[d] virtually nothing of value for the class"). The clarifying language TC Heartland chose to include is substantively no different than the language another court found adequate over a decade ago. In light of that finding, Plaintiff's quibbles with the clarifying language on the labels are unavailing.

## III. Plaintiff Has Not Plausibly Alleged That He Suffered a Cognizable Economic Injury.

Leaving aside the absence of any plausible allegation that TC Heartland's labeling is likely to mislead reasonable consumers, Plaintiff's claims independently fail because he has not plausibly alleged that the use of the phrase "100% Natural" resulted in a cognizable economic injury.

To have standing to sue under Article III, Plaintiff must plausibly allege that he suffered an "injury in fact"—*i.e.*, "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Like Article III, New York law also requires Plaintiff to establish not

only that the defendant engaged "in an act or practice that is deceptive or misleading in a material way," but also that he "has been injured by reason thereof."[8] *Oswego*, 85 N.Y.2d at 25.

In articulating this rule, the New York Court of Appeals has made clear that an alleged "act of deception, entirely independent or separate from any injury, is not sufficient to state a cause of action." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999); *see also Binder v. Premium Brands Opco LLC*, No. 23-3939, 2024 WL 2978506, at *6 (S.D.N.Y. June 11, 2024) (recognizing a "difference between 'actual injury' and a non-cognizable injury based solely on the deception itself"). In other words, "because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation," an "allegation of a defendant's deception alone does not suffice to plead injury." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021).

Here, Plaintiff's claims of economic injury rest on the premise that the product was "worth less" than what he paid and that he "did not receive what [he] paid for" when he purchased the product. Compl. ¶¶ 64–65. But that is implausible, as the labeling of Splenda Naturals Stevia clarifies precisely what ingredients the product contains, how those ingredients are processed, why TC Heartland considers them to be "natural," and where a consumer can find more information if he or she is inclined. *See id.* ¶ 42. The labeling clarifies exactly what the product is: a low-calorie, plant-based, non-GMO sweetener that contains stevia leaf extract and erythritol.

Plaintiff does not dispute that he received such a product. All he alleges is that those two ingredients did not comport with his personal definition of "100% Natural" because they were processed using means that do not exist in nature. But even if that were so, Plaintiff's "subjective

---

[8] The same is true under the NJCFA, which requires a plaintiff to allege not only "unlawful conduct by the defendant," but also "an ascertainable loss by the plaintiff" and "a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011).

disappointment" that the product did not satisfy his definition of "natural" does not amount to a legally cognizable injury. *Belcastro v. Burberry Ltd.*, No. 16-1080, 2017 WL 5991782, at *1 (S.D.N.Y. Dec. 1, 2017); *see also, e.g.*, *Tyrnauer v Ben & Jerry's Homemade, Inc.*, --- F. Supp.3d ----, 2024 WL 3346840, at *7 (D. Vt. July 8, 2024) ("Courts have ruled that either asserting a 'benefit of the bargain' or 'overpayment' theory of economic harm based on a mere subjective belief in a product's quality will not suffice for standing.").

In other words, what matters is not whether the product lived up to Plaintiff's expectations for a "natural" (or "100% natural") sweetener. Instead, the relevant question is whether Plaintiff "receive[d] the full value of [his] purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). And courts throughout the country have applied this rule to dismiss lawsuits in which the plaintiff could not plausibly allege that she "overpaid by some *objective* measure" for the product. *Belcastro*, 2017 WL 5991782, at *4; *see also Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 12 (1st Cir. 2017) (affirming dismissal of false advertising claim where the plaintiff "fail[ed] to identify any bargained-for characteristic of the sweater that she has not received" and did not allege "that the product itself was deficient in some objectively identifiable way"); *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("A plaintiff . . . must do more than allege that she did not receive the benefit she *thought* she was obtaining. The plaintiff must show that she did not receive a benefit for which she *actually* bargained.") (emphasis in original).

*In re Gerber Products Co. Heavy Metals Baby Food Litigation* is illustrative. There, the plaintiffs alleged that Gerber's baby foods were mislabeled because they contained heavy metals, and they "allege[d] they were injured because they 'did not receive the benefit of their bargain and thus overpaid for' the Baby Food Products." No. 21-269, 2022 WL 10197651, at *2 (E.D. Va. Oct. 17, 2022). The court rejected this theory of injury and found that it "runs afoul of logic." *Id.*

at *5.  "[W]hen a plaintiff purchases a consumable good and uses it to her benefit," the court explained, "there is no economic injury unless plaintiff alleges the product failed to work for its intended purpose or was worth objectively less than one could reasonably expect." *Id.* at *6.  But as the court noted, the plaintiffs did not allege that Gerber's baby foods were the "cause of any reported injuries," that their children were "at imminent risk of developing any specific ailment in the future because they consumed the Baby Food Products," or that "the Baby Food Products failed to provide Plaintiffs' children with nourishment or to otherwise perform as intended." *Id.* at *7–8.  Even if the plaintiffs subjectively believed that the products contained unacceptable levels of heavy metals, the court concluded that this did not amount to an economic injury. *Id.* at *8.

More recently, in *Tyrnauer*, the court dismissed a lawsuit alleging that Ben & Jerry's misrepresented its ice cream as "ethically sourced" and held that the plaintiffs did not plead a concrete or particularized injury.  In so holding, the court found that Ben & Jerry's did not make any specific "representation . . . that its ice cream was produced and manufactured without the participation of any person under the age of eighteen in its supply chain."  2024 WL 3346840, at *8.  The court found the absence of any such representation fatal to the plaintiffs' Article III standing, as an alleged economic injury based "on either a 'benefit of the bargain' or overpayment' theory of injury is not sufficiently 'concrete or particularized' if it is based on a subjective opinion of whether a product is 'ethical' or 'ethically sourced.'" *Id.*  As the court explained, "[t]he meaning of that term varies depending upon a consumer's own value system, and any resulting injury when that value system is violated is neither 'particularized' nor 'concrete.'" *Id.*

That reasoning applies with equal force here.  Even though Plaintiff challenges the labeling of the product as "100% Natural," he does not allege that the product fails to comport with TC Heartland's definition of that term, which appears in plain English on the back of each label.

Instead, Plaintiff claims that the product is mislabeled because it does not comport with *his* understanding of the term "100% Natural." But that does not establish that the product is different from the one TC Heartland promised or that it is objectively inferior to what Plaintiff defines as a "natural" product—which means that Plaintiff has not pleaded a cognizable economic injury.

Finally, to the extent Plaintiff alleges that the product "cost more than similar products without misleading labeling" (Compl. ¶ 62), that claim fails because Plaintiff has not identified a single product—let alone a "similar" product—that would satisfy his absolutist definition of "100% Natural" or one he would not describe as mislabeled. By definition, a "price premium" injury rests on the theory that a product "commanded a price premium *relative to comparable products* that did not include the alleged false and misleading labeling." *Kelly v. Beliv LLC*, No. 21-8134, 2024 WL 1076217, at *10 (S.D.N.Y. Mar. 12, 2024). But despite Plaintiff's professed desire for "all-natural non-nutritive sweeteners" (Compl. ¶ 57), he cannot point to a single non-nutritive sweetener that has not undergone any degree of processing—as he must to allege that those products would command a "price premium." *See, e.g.*, *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 225 (D.N.J. 2022) (holding that the plaintiffs did not plausibly allege a "price premium" injury where their plaintiff "did not put forward facts regarding any comparable, cheaper products to show a premium price was paid for the baby food products"); *Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041–42 (N.D. Ill. 2017) (dismissing consumer fraud claim where the plaintiffs failed to allege that alternative products "exist in the market"). The absence of any comparable products that satisfy Plaintiff's definition of "100% Natural" is independently fatal to his claim of a "price premium" injury.

## <u>CONCLUSION</u>

This Court should dismiss Plaintiff's lawsuit with prejudice.

Dated:  August 15, 2024

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Dean N. Panos
      Dean N. Panos (*pro hac vice*)
      Alexander M. Smith (*pro hac vice*)

Attorneys for Defendant
TC Heartland LLC